UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL MUCKENFUSS,

    Plaintiff,

v.

TYSON FRESH MEATS, INC.,

    Defendant.

CAUSE NO. 3:19-CV-536 DRL-MGG

OPINION & ORDER

Michael Muckenfuss is deaf and has had a storied career at Tyson Fresh Meats, Inc. in Logansport, Indiana since 2003. He is the highest-ranking employee in the company's general maintenance group. Midyear 2019, he sued Tyson for disability discrimination and retaliation under the Americans with Disabilities Act (ADA). *See* 42 U.S.C. § 12101 *et seq*. Tyson moved for summary judgment. The court now grants Tyson's summary judgment motion in part.

BACKGROUND

In 2003, Mr. Muckenfuss began working for Tyson as a general laborer, but since then he has been transferred or promoted six times and has received fifteen pay raises. He transferred from Tyson's rendering department to the maintenance department in 2013, where he started out as a "Level 1" employee. He has since reached the highest level of the company's seniority system for training and compensation, "Level 10." He is the highest-paid and highest-ranking employee in the general maintenance group within the maintenance department.

Mr. Muckenfuss is deaf—thus a qualified individual with a disability within the ADA's meaning. The company has provided certain accommodations to him in the past. He also has requested the following accommodations during his work tenure with Tyson: (1) an in-person American Sign Language (ASL) interpreter for specific meetings; (2) a Sorenson Video Phone that

enables users to place and receive calls through a professional ASL interpreter via videophone; (3) flashing emergency lights in areas such as the bathroom and breakroom; (4) flashing emergency lights on all forklifts and mules; and (5) basic ASL training for all supervisors.[1] The parties dispute whether Tyson's responses to these requests have been reasonable.

In October 2018, Mr. Muckenfuss filed a charge with the Equal Employment Opportunity Commission (EEOC). He alleged that Tyson failed to accommodate his deafness and subjected him to a hostile work environment. He has since conceded that there is insufficient evidence for him to prove a hostile work environment claim (ECF 37 at 2). In early 2019, Tyson reduced his overtime hours. Mr. Muckenfuss says this was done in retaliation for his EEOC charge, which led him to file an amended charge with the EEOC in February 2019 to pursue a retaliation claim. Mr. Muckenfuss is still employed with Tyson.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

---

[1] Tyson lists a "promotion to a supervisor position" as one of Mr. Muckenfuss' requested accommodations, (ECF 33 at 3), but Mr. Muckenfuss only lists the other five requests in his response brief (ECF 37 at 1), so he has abandoned this claim. Mr. Muckenfuss admits that he never applied for a supervisor position, and an employer has no obligation to promote an employee under the ADA. *See, e.g., Emerson v. N. States Power Co.*, 256 F.3d 506, 515 (7th Cir. 2001).

2

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

Title I of the ADA makes it illegal for an employer to discriminate against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A reasonable accommodation may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

Discrimination under the ADA includes the failure to make reasonable accommodations for a qualified employee with a disability, unless the employer can demonstrate the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(5)(A). The EEOC has promulgated regulations for the ADA. In its view, "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of accommodation." 29 C.F.R. § 1630.2(o)(3).

3

To prove an ADA failure to accommodate claim under Title I, Mr. Muckenfuss must establish that (1) he is a qualified individual with a disability; (2) Tyson was aware of his disability; and (3) Tyson failed to accommodate his disability reasonably. *See Preddie v. Bartholomew Consol. School Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

A.   *Exhaustion and Timeliness.*

The court must decide whether Mr. Muckenfuss timely exhausted his administrative remedies. Given that Indiana is a deferral state for disability claims, his ADA charges had to be filed with the EEOC within 300 days of the alleged violation. *See Sharp v. United Airlines Inc.*, 236 F.3d 368, 372 (7th Cir. 2001); *see also* 42 U.S.C. § 2000e-5(e)(1); *Doe v. R.R. Donnelly & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994). The 300-day window "begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured." *Sharp*, 236 F.3d at 372. For a failure to accommodate claim, the clock starts to run when the plaintiff learns his request was denied. *See Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551-52 (7th Cir. 1996). An untimely claim is barred. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000).

The 300-day requirement works like other statutes of limitation. Undisputed relevant facts about when a cause of action has accrued may render this timeliness issue a question of law for the court to decide. "If the accrual determination turns on the resolution of factual questions, however, summary judgment is inappropriate, and the statute of limitations issue must be submitted to a jury after trial." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995) (citations omitted).

The defendant has the burden to prove an affirmative defense, including any failure to comply with the statute of limitations or failure to exhaust administrative remedies. *See, e.g., Salas v. Wisconsin Dep't of Corrections*, 493 F.3d 913, 922 (7th Cir. 2007). For this reason, if at the summary judgment stage, the evidence is inconclusive as to whether the plaintiff failed to exhaust his administrative remedies,

4

then "the tie must go to the plaintiff." *Id.* With this guidance in mind, the court analyzes each accommodation request here in turn.

First, Mr. Muckenfuss requested an in-person ASL interpreter from human resources in May 2019, but that was three months after he filed his amended charge with the EEOC. Thus, he didn't timely exhaust his administrative remedies for this request, and the court cannot consider it in the first instance now. *See* 42 U.S.C. § 2000e-5(e)(1).

Mr. Muckenfuss requested an in-person ASL interpreter at other times, but these requests occurred more than 300 days before he filed his first EEOC charge in October 2018. Specifically, he says he requested (from various individuals) an ASL interpreter in 2003, between 2006 and 2007, in 2008, and in 2017 after he returned to work from a shoulder injury in September 2017. Even assuming the last request occurred the last day of September 2017, that would mean he needed to have filed his EEOC charge no later than July 27, 2018. He didn't do so until October 2, 2018. His accommodation claim in these respects is time-barred then too.

It makes no difference whether Tyson kept records of each denial because Mr. Muckenfuss testified when each event occurred. Furthermore, each refusal to accommodate was a discrete act (evinced by how Mr. Muckenfuss listed the specific year and person for each request), so the "continuing violation" doctrine has no bearing on this case.[2] *See Teague v. Northwestern Memorial Hosp.*, 492 Fed. Appx. 680, 684 (7th Cir. 2012). Even if the court were to construe these denials as part of an ongoing pattern rooted in Tyson's 10 percent policy, the outcome here would be the same because

---

[2] The "repeated violation" doctrine also does not apply. The Tenth Circuit held that this doctrine applies to claims arising under Title II of the ADA and the Rehabilitation Act. *See Hamer v. City of Trinidad*, 924 F.3d 1093, 1094 (10th Cir. 2019). Aside from this doctrine being the law of a different circuit, the Tenth Circuit specifically hung its analysis on the statutory text of Title II of the ADA, but Mr. Muckenfuss' case arises under Title I. Title II imposes an "affirmative obligation to accommodate persons with disabilities," *id.* at 1104-05 (citation omitted), whereas Title I requires an employer to reasonably accommodate a person's disability if the employer is aware of the disability. *See Preddie*, 799 F.3d at 813. The Tenth Circuit decided that the "duty to accommodate" under Title II is what conveys that "a non-compliant service, program, or activity gives rise to repeated violations." *Hamer*, 924 F.3d at 1105.

not one of the discrete acts occurred within the relevant limitations period.[3] *See Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002).

Mr. Muckenfuss argues that, because the company (through a safety supervisor) provided him with an interpreter for an orientation in 2017, that somehow reopened the door for him to make a timely accommodation claim. He claims the safety supervisor denied the request for the future, saying, "No, just this one time." Based on the record, the company denied Mr. Muckenfuss' request to have an interpreter more frequently though it provided him with an interpreter for the orientation. That denial wasn't within 300 days of his first EEOC charge. Indeed, in the next breath of his testimony, Mr. Muckenfuss says he hasn't spoken to that safety supervisor since 2015 or 2016, so 2017 seems even a speculative stretch. *See SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 601 (7th Cir. 2019) (citations omitted) (speculation doesn't create an issue of fact). This claim is time-barred.

Second, Mr. Muckenfuss says the last time he asked for a Sorenson Video Phone was during a conversation with his former supervisor in 2016. His supervisor denied this request, saying, "I can't, I can't." Because the denial occurred in 2016, this claim is time-barred too.

Third, Mr. Muckenfuss testified that he last requested forklift or mule lights in 2006. His discovery referred to requests in 2004-2007 when he was told "no." Given that these requests were made over a decade before his first EEOC charge was filed, this claim is time-barred.

Fourth, Mr. Muckenfuss argues as part of this litigation that Tyson should train its supervisors in basic-level sign language. On this record, he never made that request to the company before this case. He argues that it would prove beneficial for the company and its deaf employees, but he presents no evidence that he timely exhausted his administrative remedies on this issue. He cannot bolster his lawsuit with additional requests that he never gave Tyson a chance to accommodate or deny.

---

[3] Tyson's policy is to hire a full-time, onsite interpreter when at least 10 percent of its employees at a particular facility speaks that language. Tyson has three deaf employees at its Logansport facility out of 2,200 (or .14 percent). The court makes no finding about the reasonableness of such a policy.

Fifth, Mr. Muckenfuss requested additional emergency lights in the bathroom and breakroom in 2003 and 2006 (others had been installed elsewhere at the company), but the company denied these requests more than 300 days before his EEOC charge. His last request for additional emergency lights in 2020 came too late because it occurred after he filed both EEOC charges.

Mr. Muckenfuss testified he made another request for emergency lights in 2017. When the company was installing other equipment, he asked his supervisor, "Why wouldn't you go ahead and install the strobes too?" His supervisor declined to do so, responding, "Oh, you're fine, you're fine." Mr. Muckenfuss indicated that this conversation happened sometime in 2017, which leaves open the possibility that Tyson denied the request on or after December 6, 2017 (thus within 300 days of his EEOC charge). The court won't throw out this claim on timeliness grounds because there is a genuine triable issue when exactly the request was made and denied. *See Horn*, 50 F.3d at 1370.

It may be unlikely that the request was denied during the last three weeks of 2017 but not unreasonable to say so. Calling this conclusion "unlikely" and granting summary judgment would be weighing the evidence; but the court cannot "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe" on this factual question. *See Waldridge*, 24 F.3d at 920. Tyson has the burden to prove that Mr. Muckenfuss didn't timely exhaust his administrative remedies. *See Salas*, 493 F.3d at 922. Because the evidence remains inconclusive as to whether this denial happened on or after December 6, 2017, the tie here must go to Mr. Muckenfuss. *See id.*

The court also must construe all facts in the light most favorable to Mr. Muckenfuss, *see Bellaver*, 200 F.3d at 491-92, and the court doesn't think it unreasonable for a jury to find that this request was denied during the last three weeks of 2017, particularly as the jury might hear the evidence. The company relies in part on Mr. Muckenfuss' interrogatory answers in which he said he only asked for flashing emergency lights in 2006, 2013-2014, and in 2020—not in late 2017. The court notes that these answers to Tyson's second set of discovery requests aren't verified (ECF 35-6 at 7) to call them

7

under oath. In any event, his deposition testimony may supplement his prior disclosures and leave to the company to explore the reasons for any ostensible conflict in questioning. *See* Fed. R. Civ. P. 26(e)(1). On this record, this claim based on his 2017 request for emergency lights in the bathroom and breakroom isn't time-barred.

That doesn't change the court's conclusion on his other requests for additional emergency lights in the breakroom and bathroom. As noted earlier, "a refusal to accommodate is a discrete act—not an ongoing omission—and therefore the continuing violation doctrine does not apply." *See Teague*, 492 Fed. Appx. at 684. Although it remains unclear when in 2017 the company denied his request for flashing lights, it is clear that the denial occurred in a discrete way; when Mr. Muckenfuss asked for additional strobe lights, his supervisor said, "Oh, you're fine, you're fine." Because the refusal to accommodate was a discrete act, the continuing violation doctrine does not apply.

Accordingly, based on this record, Mr. Muckenfuss either hasn't exhausted his administrative remedies or timely pursued his ADA accommodation claims, except for his claim regarding the 2017 request for additional emergency lights in the bathroom and breakroom.

B.      *Reasonableness of the Request for Flashing Lights in the Bathroom and Breakroom.*

The court now turns to the substantive elements of Mr. Muckenfuss' failure to accommodate claim for the denied request for additional emergency lights in 2017. The court addresses only this claim. The parties don't dispute that Mr. Muckenfuss is a qualified individual with a disability or that Tyson was aware of his disability; therefore, all that is left for Mr. Muckenfuss to show is that Tyson failed to accommodate his disability reasonably. *See Preddie*, 799 F.3d at 813.

In its reply brief, Tyson argues that "several of Plaintiff's demands—daily on-site ASL interpreters, ASL training for supervisors, and promotion to a new job—are not reasonable in the first place" (ECF 41 at 8). Notably, the company doesn't argue that Mr. Muckenfuss' requests for additional emergency lights were unreasonable. The court won't develop or address arguments that aren't there.

8

*See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010); *Palmer v. Marion Cty.,* 327 F.3d 588, 597-98 (7th Cir. 2003); *Berry v. Delta Airlines, Inc.,* 260 F.3d 803, 810 (7th Cir. 2001).

On a related note, Tyson's alternative argument that Mr. Muckenfuss failed to engage in the interactive process with the company in good faith isn't persuasive on this record. *See Hoppe v. Lewis University*, 692 F.3d 833, 840 (7th Cir. 2012) ("An employer satisfies its duty to reasonably accommodate an employee with a disability when the employer does what is necessary to allow the employee to work in reasonable comfort.") There isn't evidence that Tyson offered Mr. Muckenfuss a different effective accommodation in lieu of additional emergency lights in the bathroom and breakroom that Mr. Muckenfuss rejected, or seemingly engaged in that process on this claim until years later. The company has implemented emergency lights for its deaf employees elsewhere. Whether such lights would be reasonable too in the bathrooms or breakrooms Tyson must argue to the jury. Accordingly, the court denies summary judgment on this claim.

C. *Disparate Treatment.*

In each EEOC charge, Mr. Muckenfuss alleges that he was "subjected to a hostile work environment based on his disability in violation of the Americans with Disabilities Act." He concedes this claim (ECF 37 at 2) but argues a new disparate treatment claim. Mr. Muckenfuss cannot pursue such a claim here because he didn't pursue it before the EEOC. "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Mr. Muckenfuss' disparate treatment claim was not properly presented to the EEOC, so the door has closed on this issue. *See id.* at 1111; *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 897-98 (7th Cir. 1999) ("claim for failure to accommodate is separate and distinct under the ADA from one of disparate treatment"); *Hizer v. South Bend Tribune*, 31 F. Supp.3d 986, 1000 (N.D. Ind. 2014) (citation omitted) ("Hostile work environment claims are different from disparate treatment claims because the issue is

9

not whether particular acts constitute employment discrimination or retaliation, but whether the overall environment in which a plaintiff worked was illegally hostile."). The complaint's one-time passing reference, without any supporting facts, to "disparate treatment," and the absence of discovery on this issue merely close the door harder. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

D.    *Retaliation.*

To survive summary judgment for unlawful retaliation, Mr. Muckenfuss must present evidence from which a reasonable jury could find that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a but-for causal connection between the protected activity and the adverse action. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). It is undisputed that filing an EEOC charge constitutes a statutorily protected activity. This claim stumbles on the other two prongs.

No reasonable jury could find a causal link between Mr. Muckenfuss's earlier EEOC charge in October 2018 and Tyson's reduction of his overtime hours in 2019. For one, Mr. Muckenfuss continued to work regular overtime throughout October, November, and December 2018. According to Mr. Muckenfuss, his supervisor, for about a month or so in early 2019, reduced his overtime. That supervisor left in February 2019 at which point his overtime went back to normal. Tyson's records show that Mr. Muckenfuss didn't sign up on the voluntary overtime sign-up sheets during this time frame, not until the week ending in February 16, 2019 when he went back to overtime. On this record, no reasonable jury could find that a retaliatory animus motivated his loss of overtime hours as opposed to rather legitimate reasons.

In addition, reduced overtime hours may be considered an adverse employment action, *see Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) ("When overtime pay or premium pay is a significant and expected part of an employee's annual earnings, denial of such pay may constitute an adverse employment action."), but not when, on this record, the company implemented a new

10

overtime policy reasonably as to the entire maintenance department, not singling out Mr. Muckenfuss, and when Mr. Muckenfuss hadn't signed up for overtime in the relevant period of concern.

The court isn't swayed by the attempt now, for the first time in response, to argue that the retaliation occurred from February 2019 to October 2019. This contradicts his deposition testimony, *see, e.g.*, *James v. Hale*, 959 F.3d 307, 315-17 (7th Cir. 2020), and makes no sense on this record given that the alleged company representative who retaliated against him left in February 2019. Indeed, Mr. Muckenfuss filed his amended EEOC charge, which added a retaliation claim, on February 9, 2019. Casting his retaliation claim as something altogether different now isn't appropriate or cogent. The court must enter summary judgment on his retaliation claim accordingly.

## CONCLUSION

Construing all facts and reasonable inferences in favor of Michael Muckenfuss, the court holds that all of Mr. Muckenfuss' failure to accommodate claims are barred as untimely or unexhausted, with the exception of the claim based on his request for additional flashing emergency lights from 2017. The court DENIES summary judgment only as to this claim and GRANTS summary judgment on all other claims.

SO ORDERED.

January 25, 2021                                         *s/ Damon R. Leichty*
                                                          Judge, United States District Court